## STUTZ *v.* ARMSTRONG and anotner.

*Circuit Court, W. D. Pennsylvania.* July 1, 1884.

1. PATENTS FOR INVENTION—REISSUE—DELAY.
    There is no unbending rule by which to determine what is unreasonable delay in applying for the reissue of a patent to correct a mistake in the claim by broadening it; and each case must be decided upon its special facts and merits.

2. SAME—REISSUE SUSTAINED.
    In this case, where the original letters patent were dated March 20, 1877, and upon an application filed on January 28, 1879, a reissue, which broadened the claim, was granted on December 30, 1879, no adverse rights having accrued in the mean time, the court sustain the reissue.

3. SAME—COMBINATION—PATENTABILITY.
    There is no patentable combination in a mere aggregation of old devices which produce no new effect or result due to their concurrent or successive joint and co-operating action; but it is by no means essential to a patentable combination that the several devices or elements thereof should coact upon each other. It is sufficient if all the devices co-operate with respect to the work to be done and in furtherance thereof, although each device may perform its own particular function only.

4. SAME—DISCLAIMER—REV. ST. § 4922.
    A disclaimer under section 4922, Rev. St., need not be filed (except where costs are sought to be recovered) until the court has passed upon the contested claims alleged to contain that of which the patentee was not the inventor.

5. SAME—PATENT NO. 194,059 AND REISSUE NO. 9,011 CONSTRUED—INFRINGEMENT.
    Reissued patent No. 9,011, dated December 30, 1879, and letters patent Nos. 194,059 and 198,432, dated respectively August 14, 1877, and December 18, 1877, for improvements in coal-washing machinery, construed, sustained, and *held* to be infringed.

In Equity.

*George H. Christy*, for complainant.

*D. F. Patterson*, for respondents.

ACHESON, J. The plaintiff's inventions, for which the patents in suit were granted to him, relate to improvements in machinery for washing coal, an operation whereby the mined and broken coal is freed and separated from the stones, slate, and other objectionable substances with which it is intermixed. The patents are three in number. One is reissue No. 9,011, dated December 30, 1879, granted upon an application filed January 28, 1879, the original letters patent No. 188,691 having issued March 20, 1877. The defendants are charged with the infringement of the fourth and fifth claims of the reissue. The other patents are numbered 194,059 and 198,432, and bear date August 14, 1877, and December 18, 1877, respectively. The defendants are charged with the infringement of the third claim of each of these latter patents.

It is a fact worthy of mention, not by way of raising any estoppel, but as indicating the relations of the parties, and as plenary proof of infringement, that, under a written agreement, which recognizes the plaintiff as inventor, the plaintiff built for the defendants, in 1877, two coal-washing machines, embodying his said patented improve-

ments. These two machines the defendants paid for. Afterwards, without license from the plaintiff, the defendants built six more of the same identical machines. The present suit is for the unauthorized construction and use of those six machines.

The improvements covered by the four above-specified claims are susceptible of conjoint use, and they are so used by the defendants in the machines complained of.

The first question in the case arises upon the reissue, and touches the validity of the fifth claim thereof, which was not in the original patent. It is as follows:

(5) "In a coal-washing apparatus, the combination with the cam, F, fixed upon the shaft, $u$, of the guide, $m$, connected to the piston-rod, $r$, and closely embracing said cam and shaft, as set forth."

For the proper understanding of the claim a brief explanation is necessary. The separation of the coal from the foreign substances is effected by the action of a current of water forced by means of a box-shaped piston, P, below a sieve supporting the layer of crushed coal. The material upon the sieve being lifted up by the action of the water current, settles with more or less rapidity, according to the specific gravity of the coal and its impurities, so that the latter are first deposited. In order to obtain a complete separation the uplifting action of the water must be a sudden one, and the interval between two consecutive strokes of the piston must be sufficient to allow the necessary time for the material to deposit. This movement is accomplished by means of a differential cam, F, fixed upon the shaft, $u$, and receiving its rotary movement through a pulley. The piston is raised up by a slow and uniformly progressing speed until it has attained its highest position. This is done by the aid of the guide-piece, $m$, which is forked, or composed of four legs or standards placed a sufficient distance apart to admit the cam, F, in one direction, and the cam-shaft, $u$, in the other, and is fixed to the piston-rod, $r$, and upon which the action of the cam, F, is transmitted. The cam, F, having lifted up the piston, P, to its utmost extent, will soon let escape the fork-shaped guide-piece, $m$, so that the piston, becoming free, falls down upon the body of water. The shock to the latter will produce a current which acts with great force below the layer of coal, etc., at the sieve.

Undoubtedly, the combination which is the subject of the fifth claim of the reissue is the plaintiff's invention, and its utility in a coal-washing machine is not denied. Its omission from the original patent, it is alleged by the plaintiff, was owing to the mistake of his then solicitors. Upon this point he now testifies:

"I claimed the cam with the four-legged yoke, right from the start, and I think the record of the papers sent to the attorney prove this; I think it was simply overlooked by the party who took the patent out."

Now, turning to the file-wrapper and its contents in the matter of the original grant, there is to be found therein abundant evidence, it

seems to me, to establish the alleged mistake. The guide, *m*, and its function are described in the original specification substantially as in the reissue; and while no claim was then made for the precise combination now in question, it does certainly appear that the guide-piece, *m*, as a valuable element in a patentable combination, was within the contemplation of the inventor. Hence, one of his claims as originally framed was as follows:

"The box, B, with the box-shaped piston, P, to receive additional weight, the valve, V, the differential cam, F, *with the guide-piece, m,* and piston-rod, *r*, as shown and described."

The examiner, in his letter to the inventor's solicitors, suggesting divers corrections and amendments, pointed out that the *cam* was old. The solicitors then substituted a new set of claims, from which the guide-piece, *m*, was omitted altogether. The eighth amended claim was for "the differential cam operating to lift and suddenly drop the piston." But the examiner adhering to his objection to this claim, the solicitors, in view of his references, struck it out. I am satisfied, from an attentive perusal of the papers in the case, that the solicitors did not comprehend the function of the guide-piece, *m*, or its value, and for this the true explanation may possibly be found in the fact that the inventor was of foreign speech, and may not have been able fully to explain the matter.

The authority of the commissioner of patents to correct the alleged mistake, if clearly established, by a reissue, is distinctly recognized by the supreme court in the recent decisions upon the subject of reissues.

Says Mr. Justice BRADLEY, in *Miller* v. *Brass Co.* 104 U. S. 352:

"If a patentee who has no corrections to suggest in his specification, except to make his claim broader and more comprehensive, uses due diligence in returning to the patent-office, and says, 'I omitted this,' or 'my solicitor did not understand that,' his application may be entertained, and, on a proper showing, correction may be made."

And in *James* v. *Campbell*, Id. 371, the same learned judge says:

"Of course, if, by actual inadvertence or mistake, innocently committed, the claim does not fully assert or define the patentee's right in the invention specified in the patent, a speedy application for its correction, before adverse rights have accrued, may be granted."

If the decision of the commissioner of patents here, that an actual mistake was inadvertently and innocently committed, is not conclusive, still, upon the evidence before me, I am of opinion that he committed no error in that regard.

But the defendants contend that the delay in this case in applying for the reissue was unreasonable, and therefore that as respects its fifth claim it is contrary to law and void. The supreme court has laid down no unbending rule by which to determine what is unreasonable delay in applying for the correction of such a mistake as existed here; and it seems to me that each case must be decided upon its

special facts and merits. The application here was within two years after the grant of the original letters patent; the exact lapse of time being one year, ten months, and eight days. Now, while this fact may not be conclusive, it would seem to be entitled to some consideration, in view of that provision of the patent laws by which nothing less than two full years' public use of an invention is a bar to an application for a patent. In *Miller* v. *Brass Co.* the fact that much more than two years had elapsed between the grant of the original letters patent and the application for the reissue, was evidently in the mind of Mr. Justice BRADLEY, and suggested the illustration employed by him on page 352 of the reported case. And in all the like cases in which the supreme court has ruled against the validity of the reissue, (so far as I know,) the lapse of time has been greatly in excess of two years.

Again, the correction of the mistake here by the reissue was *before any adverse rights had accrued*,—a consideration, in my judgment, of paramount importance, and evidently regarded by the supreme court as of great consequence, as appears by the quotation *supra* from Mr. Justice BRADLEY's opinion in *James* v. *Campbell.*

Furthermore, in determining whether this inventor has been guilty of inexcusable delay, perhaps it ought to count something in his favor (as his counsel urges) that being of foreign birth and education, and of alien tongue, he encountered peculiar difficulties in acquiring a knowledge of our language and laws. At any rate, he is a meritorious inventor, and in the absence of an authoritative decision invalidating his reissue for the cause assigned, I am indisposed to declare it void. Under all the circumstances, I think his application for the reissue was within a reasonable time.

The fourth claim of the reissue is as follows:

(4) "The partition, *n*, within the box, A, and in combination with the valve, $V^1$, and the sieve, *s*, said partition being arranged in relation to the other parts as described, whereby the current entering through the valve is deflected upward against the sieve, and the lower part of the box, A, is left as a receptacle for small particles of sulphur and slate, all as set forth."

This claim is identical with the fourth claim of the original, and of course its validity is not affected by the reissue. The machine has water chambers or boxes arranged in pairs, A and B, each pair of boxes being connected by the valve, $V^1$. The curved partition, *n*, projects beneath this valve forward into the box, A, and upwards towards the sieve. With each stroke of the piston, P, in the box, B, the partition, *n*, performs two important functions: *First*, it deflects the current of water, which then enters through the valve, upwards against the sieve so that it will do its proper work; and, *secondly*, it cuts off the water in the lower part of the box, A, from the action of such current, and thereby makes a dead-water chamber in the lower part of the box, A. The valve, $V^1$, opens with the downward stroke of the box-shaped piston to admit the current which sweeps along the

curved partition, n, in its gradually deflected path or course towards and through the sieve, s, and with the upward motion of the piston the valve closes to prevent the back flow. The curved partition, n, is not shown in any of the machines upon which the defendants rely as showing anticipation. Unquestionably, it is a new and useful device in coal-washing machines, and is the plaintiff's invention.

The defendants, however, insist that there is no patentable combination between the partition, valve, and sieve, because, as they allege, no new operation or result is due to their united action; that the partition and valve are altogether independent of each other, and in nowise aid or co-operate with each other in performing their respective functions, and the claim is founded upon a mere aggregation of parts, which operate independently of each other, producing no result due to their joint and co-operating action. Now, certainly there is no patentable combination in a mere aggregation of old devices which produce no new effect or result due to their concurrent or successive joint and co-operating action. But it is by no means essential to a patentable combination (as the defendants' argument implies) that the several devices or elements thereof should coact *upon each other;* it is sufficient if all the devices co-operate with respect to the work to be done, and in furtherance thereof, although each device may perform its own particular function only. Here there is complete coaction of the elements of the combination upon the through-going current of water. The valve, $V^1$, opens to admit the water at stated intervals, and allows the current to sweep along the upper surface of the curved partition, n, towards and through the sieve, s. It may be that if the valve were omitted the partition would still perform its functions, but the evidence shows that, for the best work, the valve is necessary, for without it the fine coal (which may amount to 10 per centum) is sucked through the sieve and lost. Moreover, here the elements of the combination are not all old. The partition, n, is confessedly new. And as the plaintiff might well have claimed the partition, n, generally and broadly, most assuredly his more limited claim cannot be successfully impeached.

The third claim of letters patent No. 194,059 is as follows:

(3) "The combination of the stationary sieve, s, and water-chamber, A, with the dam, n, passage, F, and dry screen, f, and with the passage, h, $g^2$, and $gg^1$, substantially as described."

This claim mainly relates to an arrangement of means whereby the cleaned coal, the waste water, and the slate and foreign substances are disposed of. The system of ports and passages is appropriate and efficient. The coal is saved in good condition, and the waste products are separated and deposited where they can be readily taken care of. Two defenses, as regards this claim, are set up: *First,* that of anticipation; and, *secondly,* that the combination is not a patentable one, it being a mere aggregation of devices lacking co-operative action. Avoiding any extended discussion of the matter, I must con-

tent myself with simply announcing my conclusion that neither of these defenses is well taken.

The third claim of.letters patent No. 198,432 is as follows:

(3) "In a coal and ore separator the hinged gate-board, *b*, with its regulating arms, *cc*, in combination with the chute, J, as described, and for the purpose set forth."

The claim relates to means for regulating the proper supply of material to the sieve. The only defense here insisted on is a want of novelty, and, to sustain it, reliance is placed altogether on a previous patent to George Lander, which shows in a coal-washing machine a sliding gate. But Lander's patent exhibits nothing which performs the function, or anything like thereunto, of the plaintiff's regulating arms, *cc*. Furthermore, it appears from the evidence that the plaintiff's device is less complicated, and lets the material out more readily than Lander's. Upon the whole, I am not satisfied that the defendants have successfully made out this defense.

Finally, the defendants contend that this suit cannot be maintained under the provisions of section 4922, Rev. St., for want of a disclaimer by the plaintiff of certain claims, (other than those already discussed,) embracing things, it is alleged, of which he was not the original and first inventor. But no proof has been taken to show that the claims referred to are bad for the reason suggested, or for any reason, and the case is not in a condition for an adjudication in respect to those claims. The only infringement complained of is of the four claims considered in this opinion, and to them alone was the evidence directed. Moreover, it is settled that a disclaimer need not be filed until the court has passed upon the contested claims. *O'Reilly* v. *Morse*, 15 How. 62; *Seymour* v. *McCormick*, 19 How. 96.

Let a decree be drawn in favor of the plaintiff.