## WOOLWINE METAL PRODUCTS CO. v. BOYLE.

(Circuit Court of Appeals, Ninth Circuit. April 3, 1922. Rehearing Denied
May 15, 1922.)

### No. 3805.

Patents ⊛328—Reissue 14,695, for canteen, held valid and infringed.

The Boyle reissue patent, No. 14,695 (original No. 1,230,459), for a canteen, granted on a showing that the original specification and claims were defective and insufficient to cover the actual invention as disclosed by the drawings, which are identical in the original and reissue, *held* valid and also infringed.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Suit in equity by Willis J. Boyle, Sr., against the Woolwine Metal Products Company. Decree for complainant, and defendant appeals. Affirmed.

The appellee, Willis J. Boyle, Sr., had been a manufacturer of canteens since 1899. From time to time he had improved on his canteens, and on the 15th of July, 1916, had perfected a type of canteen for which he made application for a patent, and on June 19, 1917, patent No. 1,230,459 was issued to him. This patent contained only one claim, as follows:

"A canteen or like container, including an annular sheet metal body, side plates formed with peripheral outwardly opening channels of which the outer side walls telescope within the edges of the annular sheet metal body, the edges of the side plates and sheet metal body being connected by continuous seams, and keepers extending transversely across the annular sheet metal body and having the ends thereof returned and secured within the peripheral channels of the side plates."

On July 18, 1917, the appellant, Woolwine Metal Products Company, put on the market a canteen of somewhat similar construction, and on July 26, 1917, Sigmund Frey applied for patent rights thereto. The patent was granted to him on October 15, 1918, and on the same day he transferred his rights to the Woolwine Metal Products Company. This patent is No. 1,281,549.

On November 19, 1917, Boyle commenced suit in the United States District Court against Woolwine Metal Products Company for infringement of patent No. 1,230,459. A trial was had, and on March 4, 1919, a decree was made and entered, dismissing the bill of complaint, on the ground that the patent had not been infringed. Shortly afterwards, on April 11, 1919, the appellee applied for a reissue of patent No. 1,230,459, upon its surrender. The application was granted, and reissued patent No. 14,695 was granted to him on July 29, 1919. In the reissued patent the one claim of the original patent is repeated, and five new claims are added.

On August 15, 1919, Boyle, the appellee herein, commenced suit against the Woolwine Metal Products Company for infringement of reissued patent No. 14,695. At the trial the plaintiff withdrew the charge of infringement against claim one of the reissued patent. On September 16, 1921, the trial court rendered an interlocutory decree, sustaining the validity of the reissued patent and adjudging infringement of claims 2, 3, 4, 5, and 6 thereof. From this decree the present appeal is taken.

Frederick S. Lyon and Leonard S. Lyon, both of Los Angeles, Cal., for appellant.

Raymond Ives Blakeslee, of Los Angeles, Cal., and John H. Miller, of San Francisco, Cal., for appellee.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before ROSS, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The drawings for plaintiff's original patent No. 1,230,459, dated June 19, 1917, issued on application filed July 15, 1916, for improvements in containers, more particularly to canteens for carrying and dispensing water and other liquids, and the drawings for reissue patent No. 14,695, dated July 29, 1919, in suit in this case, are identical in every particular. By these drawings the canteen is shown as comprising two lateral body members a and b, and an intermediate connecting body member c; such members together inclosing an internal space to which liquid is introduced and from which liquid may be dispensed through a threaded spout or outwardly projecting mouth through the intermediate member body c. The particular parts of the drawing which disclose the members of the container construction involved in this suit are as follows:

"Keepers or strap guides e are provided upon the container body, arching over the intermediate body member c so as to suitably accommodate a strap between such keepers and the intermediate body member c, and likewise between seam beads f provided or produced at the zones of junction of the members a and b respectively, and the intermediate member c."

These keepers, preferably consisting each of a metallic plate, are designed to act as guides for the strap carried around the bottom and sides of the canteen, so that the strap and canteen can be kept in position when the strap is slung over the shoulder of a person carrying the canteen, and it is claimed that by the means or mode of their attachment to the canteen there is secured an effective bracing, binding, and clamping together of the structural body members a, b and c, so that their tendency to become separated one from the other is effectively overcome, while the keepers are held firmly in place to perform their functions of keepers, strap holders, guides, feet, and supports.

In the original suit plaintiff contended that the keepers had these additional functions in the invention, but the court did not find these functions in the specification or claim of the patent. The court did say, however, in its opinion that:

"If there were anything in plaintiff's combination which would justify the court in construing his patent as covering a footrest, or other sustaining member of the canteen structure, or even a supporting or reinforcing structure, the court would be impelled to decree infringement."

We understand the lower court in this decision to have meant to say that, if there had been anything in the plaintiff's combination *as disclosed in the specification and claimed in the patent* as covering a footrest or other sustaining member of the canteen structure, or even a supporting or reinforcing structure, infringement would have been decreed; but, because of *the absence of such specification and claim from plaintiff's patent*, the decree was directed in favor of defendant. Upon the rendering of this decision, the plaintiff within 26 days surrendered his patent to the Patent Office and applied for a reissue, upon a showing by affidavit that the patent surrendered was incomplete and not fully operative, for the reason that the specification thereof was

insufficient and incomplete, and that such insufficiency and incompleteness existed particularly in the failure to set forth clearly and in full certain essential features of the improvements, and the construction and performance or service or mode of use and application of the same, and that the errors which rendered such patent so incomplete and wanting in full operativeness arose from inadvertence, and without any fraudulent or deceptive intention. He inclosed a copy of the court's opinion in support of his application. On July 29, 1919, a reissue was granted, with a specification and claims covering the construction exhibited in the drawings in the original patent.

The defendant's canteen had been constructed under patent No. 1,-281,549, issued to Sigmund Frey on October 15, 1918, on application filed July 26, 1917. It specified that the object of his invention was to make provision for preventing rolling of the canteen, and to provide a canteen with feet so constructed as to insure against their becoming separated from the body of the canteen. Another object was to so construct the canteen as to provide a supplemental bottom or reinforcing member in combination with supporting feet. These essential elements of defendant's patent are found in the drawings of plaintiff's prior original patent, dated June 19, 1917. On a question of anticipation this would be sufficient to establish plaintiff's prior rights to his construction of the canteen. "Models or drawings may constitute invention, to avoid anticipation." Bowers v. von Schmidt (C. C.) 63 Fed. 572, 577. In the same case on appeal (80 Fed. 121, 140, 25 C. C. A. 323, 342), this court said:

"As against the defense of anticipation, it is well settled that the patentee may show, if he can, the fact of invention by drawings, sketches, models, or any other competent proof"—citing Loom Co. v. Higgins, 105 U. S. 594, 26 L. Ed. 1177; Bates v. Coe, 98 U. S. 34, 25 L. Ed. 68; Smith v. Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952. Apparatus v. Woerle (C. C.) 29 Fed. 449.

In the case of Loom Co. v. Higgins, supra, the Supreme Court said:

"An invention relating to machinery may be exhibited either in a drawing or in a model, so as to lay the foundation of a claim to priority, if it be sufficiently plain to enable those skilled in the art to understand it."

We cite this law for the purpose of showing that the plaintiff has the right to rely upon his drawings of the several parts of his canteen as evidence of the fact that the reissued patent is for the same invention as the original patent.

Section 4916 of the Revised Statutes (Comp. St. § 9461), authorizing the reissue of patents, provides that:

"Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the Commissioner shall, on the surrender of such patent * * * cause a new patent for the same invention, in accordance with the corrected specification, to be issued to the patentee * * * for the unexpired part of the term of the original patent. Such surrender shall take effect upon the issue of the amended patent. * * * Every patent so reissued, together with the corrected specification, shall have the same effect and operation in law, on the trial of all actions for causes thereafter arising,

as if the same had been originally filed in such corrected form; but no new matter shall be introduced into the specification."

In Topliff v. Topliff, 145 U. S. 156, 170, 12 Sup. Ct. 825, 831 (36 L. Ed. 658) the Supreme Court reviewed the authorities upon the scope and validity of various reissued patents and stated the law as follows:

'From this summary of the authorities it may be regarded as the settled rule of this court that the power to reissue may be exercised when the patent is inoperative by reason of the fact that the specification as originally drawn was defective or insufficient, or the claims were narrower than the actual invention of the patentee, provided the error has arisen from inadvertence or mistake, and the patentee is guilty of no fraud or deception; but that such reissues are subject to the following qualifications:

"First. That it shall be the same invention as the original patent, as such invention appears from the specification and claims of such original.

"Second. That due diligence must be exercised in discovering the mistake in the original patent, and that, if it be sought for the purpose of enlarging the claim, the lapse of two years will ordinarily, though not always, be treated as evidence of an abandonment of the new matter to the public, to the same extent that a failure by the inventor to apply for a patent within two years from the public use or sale of his invention is regarded by the statute as conclusive evidence of an abandonment of the patent to the public.

"Third. That this court will not review the decision of the Commissioner upon the question of inadvertence, accident, or mistake, unless the matter is manifest from the record; but that the question whether the application was made within a reasonable time is, in most, if not in all, such cases a question of law for the court."

We are of the opinion that the reissued patent in this case is for the same invention for which the application was made for the original patent; that the specification as originally drawn was defective and insufficient in describing the details of construction as shown by the drawings; that the original claim was likewise defective and insufficient, and did not fully cover the elements of the invention; that these errors in both the specification and claim arose from inadvertence and mistake; and that the patentee was guilty of no fraud and deception in the application for reissue. We have stated the proceedings in the court and the terms of the decree under which the errors in the specification and claim were discovered, from which it appears that due diligence was exercised in discovering the mistakes in the original patent and in bringing them to the attention of the patent office authorities. We are of the opinion that the proceedings before the Commissioner of Patents and the application for reissue were in all respects regular and within the power and authority of that officer.

The five additional claims in the reissued patent need not be repeated here. They identify the various elements of the invention, following more accurately the details set out in the drawings and in the amended specification. This identification, instead of broadening the original claim, has the effect of narrowing it to a more accurate description of the actual invention.

The interlocutory decree of the District Court provides that the plaintiff (appellee) recover of the defendant (appellant) the profits and damages caused by defendant's infringement of the reissued patent subsequent to August 8, 1919. As the reissued patent is dated July 29, 1919, and this suit was commenced on August 15, 1919, we do not

find that the defendant acquired any intervening rights as against plaintiff's rights under the reissued patent. Abercrombie & Fitch Co. v. Baldwin, 245 U. S. 198, 209, 38 Sup. Ct. 104, 62 L. Ed. 240.

The decree of the District Court is affirmed.