## Case No. 13,321.

STAR SALT CASTER CO. et al v. CROSS-MAN et al.

[4 Cliff. 568; 3 Ban. & A. 281] [1]

Circuit Court, D. Massachusetts.   May Term. 1878.

PATENTS—CONTRACTS — IMPROVEMENTS — ROYALTY —SALT CASTER BOTTLES.

1. Contracts concerning the use and enjoyment of patented inventions are to be construed in the same way as contracts respecting other species of property; that is, so as to carry into effect the intention of the parties as collected from the language employed, the subject-matter, and the surrounding circumstances.

2. Two patents may both be valid where the second is an improvement on the first; and if the second includes the first, neither of the two owners can lawfully use the invention of the other without such other's consent.

[Cited in Cantrell v. Wallick, 117 U. S. 694, 6 Sup. Ct. 970.]

3. The patentee under a subsequent patent agreed to pay to the owner of the earlier patent

[1] [Reported by William Henry Clifford, Esq., and by Hubert A. Banning, Esq., and Henry Arden, Esq., and here compiled and reprinted by permission.]

two cents upon each and every dozen of articles made in conformity to the specifications of the second patent, whether made by him as owner of the patent or by his licensees. The owner of the earlier patent agreed that the articles (salt caster bottles) made by him in accordance with his patent should be provided with wooden pulverizers, and the pulverizers used in the bottles made by the owner of the second patent should be metallic ones. *Held*, that the agreement was valid, and was such as it was competent for the parties to make concerning the patents referred to.

4. The contract restricted the patentee of the first patent to the use of wooden pulverizers only, and was also a consent that the owner of the second patent might work under that patent, using metallic pulverizers.

5. The respondents knowing of the agreement between the patentees, at the time their licenses were acquired, are bound by it.

6. The making of the bottles by the owners of the first patent, with pulverizers such as were reserved to the owner of the second patent by the contract, and claimed in his patent, is infringement on the part of the owner of the first patent.

[7. Cited in Hammond v. Hunt, Case No. 6,-003, and in brief in Jarecki v. Hays, 161 Pa. 622, 29 Sup. Ct. 118, to the point that an exclusive licensee may maintain a patent suit even against the patentee.]

Bill in equity [by the Star Salt Caster Company and others against Charles P. Crossman and others] to restrain the respondents from making salt bottles, casters, &c., in conformity with the patent of the complainants [granted December 3, 1867, No. 71,643]. The respondents owned a patent earlier in date than that of the complainants. The patentees, however, had made a contract concerning their respective patents, in which each one was restricted, in his manufacture of the articles, to a particular kind of pulverizer. The owner of the first patent broke the agreement, and made pulverizers such as were reserved to the owner of the latter patent, and covered by his claim.

George A. Bruce, for complainants.

Thomas Weston, Jr., for respondents.

The use of a particular substance in the manufacture of a patented article cannot be restricted by any agreement which parties may make under a license to manufacture and sell under the patent, nor would such agreement affect a party not named in the agreement. The defendant's demurrer must be sustained. The complainants cannot have the relief prayed for, as they are not the owners of the patent, only licensees. A licensee cannot obtain an injunction restraining the defendants from manufacturing and selling. The owner of the patent can alone have the relief. The complainants' remedy, if any, is an action at law. Suydam v. Day [Case No. 13,654]; Potter v. Holland [Id. 11,329]. The complainants are not entitled to relief under their bill. The defendants have a legal right to manufacture and sell under the Crossman patent, using metallic pulverizers under this agreement. If there is any doubt as to the meaning of this contract, it arises on the

meaning of the words "his said patent." Parol evidence may be received to explain the meaning of these words, and to show the circumstances under which they were used. Macdonald v. Longbottom, 1 El. & El. 977, 987; Stoops v. Smith, 100 Mass. 63. The attempt to restrict the material from which the pulverizers should be made, in the contract annexed to the complainants' bill, is not a valid restriction, and, as such, is null and void.

The agreement is under a certain patent, and relates to that patent. It can confer no other rights than those granted in the letters-patent. The letters-patent secured the invention to the inventor. It does not limit him to any particular material. The license gave to the party the right to manufacture and sell, and included whatever material they saw fit to use in their manufacture of it. It is not to be presumed that a grantor intends to grant more than he has a right to grant, or that a grantee intends to receive, by way of grant, that to which he has a full right without a grant. Goodyear v. Cary [Case No. 5,562]. It is not permitted for a patentee to carve several monopolies out of one. Sanford v. Messer [Id. 12,314]. But even if this was valid as to Crossman, it cannot be binding on Morey & Smith. It is a personal agreement with Crossman. The contract or agreement does not extend to his assignee, or to any party under him. He does not restrict others than himself to whom he might give a full and entire license to manufacture and sell. If it was not intended to make it a personal agreement with Crossman, it would have been so stated, as in the case of the other parties to the agreement.

CLIFFORD, Circuit Justice. Contracts touching the transfer, use, and enjoyment of patented inventions are to be construed in the same way as contracts respecting other species of property, so as to carry into effect the intention of the parties, as collected from the language employed, the subject-matter, and the surrounding circumstances. Add. Cont. (7th Ed.) 164. Two patents constitute the subject-matter of the present controversy, one of which, dated Sept. 15, 1863, was granted to the first-named respondent. It purports to be for a new and useful improvement in salt boxes, casters, &c., the object of which, as the patentee states, is to prevent the salt in a salt box from forming into lumps and clogging up the perforations in the cover of the box. As stated in the specification, it consists in the employment or use, in a salt box, of a stationary obstruction, formed by a series of arms extending across the box, or by wires or any other equivalent means, in such a manner that the salt will be pulverized by coming in contact with said obstruction whenever the box is shaken, for the purpose of giving a free discharge of the salt through the openings in the cover. Letters-patent were also

granted to George B. Richardson, dated Dec. 3, 1867, for an improved salt bottle or box, which, as described in the specification, consists in placing within a salt bottle or box a movable rod or pulverizer, made of cast metal or other suitable material, enlarged at each end, and provided with points or projections, so that, when the bottle is shaken, the pulverizer will move within it and effectually break up the salt so that it can escape freely through the perforated cap of the bottle. Glass bottles are usually employed, and, in constructing the same, the patentee states that he places a piece of cork or other suitable material at the bottom of the bottle, so as to deaden the blow of the pulverizer and prevent it from breaking the bottle when the latter is empty; and he states in his specification, in that connection, that his invention consists in the combination of that feature of the same with the bottle and the described pulverizer, but the claim is only for the pulverizer in combination with the bottle, called in the claim the receptacle.

Two patents of the kind may both be valid where the second is an improvement upon the first, in which event, if the second includes the first, neither can lawfully use that of the other without the other's consent. Plainly the second patent could not be used without the consent of the owner of the first, nor could the owner of the first patent use the second without the consent of the owner, as the patent contains an invention which the owner of the first patent never made. Woodworth v. Rogers [Case No. 18,018]. These explanations are sufficient to show that ground of controversy existed between the parties in the enjoyment of the several rights secured to them by the respective patents, and the record shows that difficulty in that regard did arise between the respective owners of these letters-patent, and that they entered into a compromise agreement in writing, which, for the sake of convenience and the purposes of this investigation, may be regarded as an agreement between the two patentees as the separate holders of the patents in question.

Two of the complainants, joined with the patentee of the second patent, have been stricken out of the pleadings by consent, and the others who remain, besides him, claim by virtue of his right under the agreement. Nor is there any difficulty in taking that view so far as respects the respondents, as the charge of the bill of complaint is, that those joined with the patentee of the first patent had knowledge of the agreement · in question, which must be proved, to render them liable. By the terms of the agreement, the patentee of the second patent agreed to pay a royalty to the patentee of the first patent, of two cents upon each and every dozen of salt bottles made in accordance with the second patent, whether made by him, as patentee of the second patent, or by his licensees, and to make a full and true return of the same the first day of each month, during the continuance of the agreement. On the other hand, the patentee of the first patent agreed that the caster bottles made in accordance with his patent shall be provided with wooden pulverizers, and that the salt bottles he, the patentee of the second patent, manufactures ·or allows to be manufactured shall be provided, as at present, with metallic pulverizers. Based on that agreement, the bill of complaint alleges that by the contract it was agreed that all casters manufactured by the patentee of the first patent, under his patent, should contain wooden pulverizers only, and that all salt bottles or boxes manufactured by the patentee of the second patent, made under his patent, should contain only metallic pulverizers; and charges that the respondent and his licensees are manufacturing and selling casters or bottles furnished with metallic pulverizers in violation of the said written agreement.

Service was made, and the respondents appeared and filed two answers.

1. Crossman admits the patents, but denies that there was any controversy between him and the complainants.

2. He alleges that the patentee of the second patent wanted a license from him, the patentee in the first patent, to use his invention as described in the first, and that the agreement related solely to the second patent and none other; that no rights under the first patent were, or were intended to be, conveyed to the complainants.

3. He admits the license to the other two respondents, but alleges that he excepted from the license any right to manufacture salt boxes or casters under the second patent.

Answer in due form was also filed by the other two respondents to the effect following:

1. That they are ignorant that any controversy existed between the separate owners of the patents as to their respective rights under the same.

2. They allege that the second patent was void, and that the agreement gave no right to the complainants under the first patent.

3. That the patentee of the first patent has kept and performed all the conditions of the written agreement.

4. That the patentee of the first patent had no right to make such an agreement, nor had the complainants any right to receive it, because it could not be conferred by such an agreement.

5. They deny infringement, and insist that the salt boxes or casters which they manufacture are constructed in accordance with the patent set up in their answer.

Demurrer was also filed by the two respondents, assigning several causes for the same, of which one only ·will be mentioned, which is, that three of the complainants therein named are not interested to maintain the bill of complaint. Suppose there was such controversy between the parties to the

written agreement as that alleged in the bill of complaint, it would not impair the validity or operative character of the agreement; but it is not necessary to rest the decision upon that ground, as the evidence shows to the entire satisfaction of the court that the allegations of the bill of complaint in that regard are true, which is all that need be said in answer to the first defence.

Attempt is made by the second defence to give an interpretation to the written agreement, which the court cannot sustain. Instead of that, the court is of the opinion that, by the true construction of the agreement, the patentee of the first patent agreed that caster bottles made in accordance with the patent, whether manufactured by himself or his licensees, should be provided with wooden pulverizers, and that the salt bottles or casters constructed by the patentee of the second patent, or his licensees, should be provided with pulverizers such as the patentee of the second patent was constructing at the date of the written agreement. No reasons are assigned to support the proposition that the patentee of the first patent possessed no power to make such a contract, and it is believed that none can be which will be satisfactory. Inventions secured by letters-patent are property in the holder of the patent, and as such are as much entitled to protection as any other property consisting of a franchise, during the term for which the franchise or the exclusive right is granted. Such a holder may sell, assign, lease, or give away the property, or enter into any arrangement or agreement respecting the same, not enlarging the right granted, as the same might make with any other personal property. Authorities to support that proposition are not necessary, as the statement of it is quite sufficient to secure in its behalf universal assent. Parties are supposed to mean what they say. If so, it is clear that the patentee of the first patent contracted to use wooden pulverizers only, and consented that the owner of the second patent might work under the second patent, using only metallic pulverizers, which is a sufficient response to all the propositions that the contract gave the patentee of the second patent no right to practise the invention secured by the first patent. Grant that, and it follows that the patentee of the first patent has not kept his covenants, as the proofs are full to the point that he has made, and is making, salt boxes or casters with metallic pulverizers, in direct violation of the agreement.

Two of the respondents claim that they are not liable, because, as they allege, they acquired the right to practise the invention secured by the first patent without any knowledge of the written agreement; but the proof is the other way, and shows not only that they knew what the terms of the agreement were, but that they had a copy of it in their possession when they acquired their right from the patentee of the first patent; nor is there any merit in the objection that some of the complainants have no interest to maintain the suit, as two of those mentioned have been stricken out by consent, and the record shows that the other acquired an interest in the second before the written agreement was executed.

Nothing remains to be considered but the charge of infringement. Sufficient has already been remarked to show that the first-named respondent has not kept and performed his covenants, and that the other two respondents, as his assignees, have manufactured and sold salt bottles in accordance with the patent mentioned in their answer, which the record shows has a pulverizer-rod with several series of radial points arranged in such a manner that the unscrewing of the cup from the neck of the bottle will produce a spiral motion of the points through the contents of the bottle. Crossman admits that his licensees have made salt boxes or casters with metallic pulverizers and sold the same, and that he has received payment for all they have sold. Taken as a whole, the evidence shows that the two respondents have made and sold salt boxes or casters provided with metallic pulverizers, in violation of the said written agreement, and with full knowledge of the existence of that agreement.

Decree for the complainants for an account, and for an injunction.