BOWERS v. PACIFIC COAST DREDGING & RECLAMATION CO. et al.

(Circuit Court, N. D. California.    January 15, 1900.)

No. 11,949.

1. PATENTS—INFRINGEMENT—EVIDENCE.

The granting of two patents for similar devices is not conclusive of a lack of identity between such devices, but one may be merely an improvement on the other, the patent for which does not give the patentee any right to use the completed device described therein, without the consent of the prior patentee.

2. SAME—DREDGING MACHINES.

The effect of the construction given by the courts to the Bowers patents, as covering pioneer inventions in the art of dredging, is to entitle the patentee to make broad generic claims for his inventions, without limitation as to the form of construction of the particular elements, and to render all subsequent machines infringements which employ substantially the same means to accomplish the same results.

3. SAME.

The Bowers patent, No. 318,859, for a dredging machine, claims 9, 11, 12, and 13, and No. 318,860, for the art of dredging, claims 3 and 5, are infringed by a dredging apparatus constructed in accordance with the Parker patent, No. 601,524, which employs an equivalent device, within the broad construction to which the Bowers patents are entitled, for swinging the dredge boat from side to side while in operation.

4. SAME—ROTARY EXCAVATOR.

The rotary excavator covered by the Bowers patent, No. 318,859, claims 10, 13, 53, 54, 59, and by No. 318,860, claim 5, is infringed by a rotary excavator having a side feed, an inward delivery through itself, and operated in a similar manner, although the dredged material is forced inward more by the current of water drawn into the suction pipe, and less by the action of the cutting blades, than in the one described in the patents.

5. SAME—VIOLATION OF INJUNCTION—PUNISHMENT FOR CONTEMPT.

When a defendant, after hearing, has been perpetually enjoined from infringing complainant's patent, it is his duty, before employing a device which may infringe, to obtain the opinion of the court thereon; and, if he fails to do so, the fact that he acts in good faith, or on the advice of counsel, is no protection against punishment for contempt, when it is adjudged that such device in fact infringes.

On order to show cause why respondents should not be punished for contempt in violating a writ of perpetual injunction issued under interlocutory decree.

J. H. Miller, for complainant.

R. Percy Wright (D. M. Delmas, of counsel), for respondents.

MORROW, Circuit Judge.    This is a proceeding against the respondents for violating a perpetual injunction issued upon an interlocutory decree entered in this case December 12, 1898. It was there adjudged and decreed that the letters patent of the United States, No. 318,859, bearing date May 26, 1885, for a "dredging machine," granted by the government of the United States to Alphonzo B. Bowers, the complainant, were good and valid in law as to claims 9, 10, 11, 12, 13, 16, 22, 25, 53, 54, 59, and 87, and that the said Alphonzo B. Bowers was the original and first inventor of the invention described in said letters patent, and claimed and patented in and by the said above-specified claims, and each of them;

that the letters patent of the United States, No. 318,860, bearing date May 26, 1885, for the "art of dredging," granted by the government of the United States to Alphonzo B. Bowers, complainant, were good and valid in law as to claims 3 and 5 thereof; and that the said complainant, Alphonzo B. Bowers, was the original and first inventor of the inventions described in said letters patent, and claimed and patented in and by the said above-specified claims, and each of them. It was further decreed that the respondents, the Pacific Dredging & Reclamation Company and John Hackett, and each of them, be enjoined and restrained from making, using, or selling any dredging machinery, appliances, or apparatus containing the inventions claimed, covered, and patented in and by the claims mentioned in the decree, and also from infringing in any manner whatever upon any of the above-specified claims. On January 21, 1899, the complainant filed affidavits charging the respondents, the Pacific Coast Dredging & Reclamation Company and John Hackett, with contempt of court, in having violated the injunction issued against them, in the infringement of claims 9, 11, 12, 13, and 87 of patent No. 318,859, and claims 3 and 5 of patent No. 318,860. Thereupon an order to show cause was issued and served upon the respondents, and in March, 1899, the matter came on for hearing. The affidavits on the part of the complainant alleged that the respondents were engaged in dredging on the San Joaquin river, near the mouth of Stockton channel, and near the city of Stockton; that the work in which the respondents were engaged was the deepening of the river channel by excavating the material therefrom and depositing it on the shore. The apparatus used was a hydraulic dredger, photographs of which were taken, and attached to one of the affidavits. A model of this machine was produced in court upon the hearing. It consisted of a dredge boat, with an excavator, and a practically rigid line of discharge pipe, with joint or hinge connections, and suitable apparatus for operating the excavator, and for drawing the spoils from the excavation through the excavator, and for discharging the same at a distance through the discharge pipe. The complainant's dredger, alleged to have been infringed, consists, also, of a dredge boat, with an excavator, and a line of flexible discharge pipe flexibly connected with the dredge boat at or near a pivot or center of oscillation. In a general way, the two machines perform substantially the same function in the operation of dredging, and in transporting to and depositing the dredged material at a distant point. Indeed, it is evident from an inspection of the two devices that the builder of respondents' dredger, while departing from the mechanism of complainant's machine in some of its details, has nevertheless adopted its general idea of construction, and has secured at least some of the advantages of its method of operation. But the respondents justify the construction and operation of their machine on the authority of a patent numbered 601,524, issued by the United States to John R. Parker on the 29th day of March, 1898, for a dredging apparatus. This fact does not, however, conclusively establish the absence of identity. Two patents may be valid when the second invention is merely an improvement

upon the first, and, when the second includes the first, neither patentee can lawfully use the invention of the other without his consent. Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017; Caster Co. v. Crossman, 4 Cliff. 568, 22 Fed. Cas. 1133 (No. 13,321). It is true that every patent is prima facie evidence of the novelty of the invention described in the patent, but the invention patented is the invention set forth in the claim, and that only. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 278, 24 L. Ed. 344; Railroad Co. v. Mellon, 104 U. S. 112, 118, 26 L. Ed. 639; Manufacturing Co. v. Greenleaf, 117 U. S. 554, 559, 6 Sup. Ct. 846, 29 L. Ed. 952. The identity or lack of identity in two patented inventions for similar devices must therefore be determined by a comparison of the claims of the two patents. The claims of complainant's patent No. 318,859, alleged to have been infringed, are as follows:

"(9) A dredge boat, having a self-contained pivot, forming a center of oscillation, with devices for swinging and working said boat upon said pivot, in combination with a suction pipe and exhausting apparatus." "(11) A dredge boat, having a self-contained pivot or center of oscillation, with devices for swinging and working said boat upon said pivot, in combination with a pipe for discharging the spoils. (12) In a dredging apparatus having a side feed and self-contained pivot or center of oscillation, a discharge pipe, flexibly mounted at or near said pivot, to allow said apparatus to swing without material alteration of the position of said discharge pipe. (13) In a dredging machine having a device for excavating from side to side of the cut, a discharge pipe extending from a discharging apparatus to or near a center of oscillation, where it is provided with a hollow, flexible joint, or other suitable connection, and is prolonged thence to a place of discharge." "(87) In combination with a dredge boat having devices for swinging and working said boat with a side feed, a hauling line having connection direct from the anchorage to the excavator support, and near the point of resistance, and arranged to throw a large portion of the strain of the side feed on the outer end of the apparatus carrying the excavating device."

The claims of complainant's patent, No. 318,860, alleged to have been infringed, are as follows:

"(3) The improvement in the art of dredging, which consists in oscillating the boat on a contained center, thereby making an arc-shaped cut during the side movement of the boat, substantially as described." "(5) The described method of dredging, which consists in oscillating the dredge boat on a center, and by such oscillation forcing an excavator continuously sidewise, thus making an arc-shaped cut, and drawing the excavated material inboard by suction."

The first of these patents was before this court in the case of Bowers v. Von Schmidt, 63 Fed. 572. In that case the defendant was proceeded against for infringing claims numbered 10, 16, 25, 26, 33, 53, 54, 59, and 75 of this patent, and also for infringing certain claims of another patent, not involved in this action. The defendant in that case justified the use of his machine under several patents,— among others, a patent issued to him, numbered 185,600, dated December 19, 1876, for a "machine for dredging sand and mud from bars, rivers, harbors, and docks," and also under a patent issued to him, numbered 277,177, dated May 8, 1883, for an "excavating, curved, rotating plow for submarine work." The court held that complainant's patent No. 318,859 was valid, and covered inventions of a pioneer

character, and that the claims were entitled to a broad construction. It was further held that the defendant had infringed claims Nos. 10, 16, 25, 53, 54, and 59. The case was taken to the court of appeals, where complainant's patents were fully considered, and the judgment of the circuit court affirmed. 25 C. C. A. 323, 80 Fed. 121, 48 U. S. App. 120. In the present case the pioneer character of the Bowers invention was assailed at the trial by evidence of certain prior inventions relating to dredgers, which it was said had not been before this court or the court of appeals in the prior case, and which, it was claimed, anticipated Bowers' patent. Among others, there was introduced in evidence an English patent to Louis Schwartzkopff, of Berlin, dated August 9, 1856, for "apparatus for raising mud and soil from the bottoms of rivers." 91 Fed. 381. The defense based upon this prior invention, as showing the state of the art at the time Bowers applied for his patent, was pressed upon the attention of the court with great ability and zeal, and the opinion of the court was directed mainly to the consideration of that defense. After a careful examination of that device and its method of operation, it was determined that while the Schwartzkopff patent disclosed, in a general way, the idea of a dredging machine intended to operate as the Bowers machine does, it did not describe a machine which was effective to carry such an idea to a successful result. This conclusion necessarily left the claims of the Bowers patent entitled to the broad construction of pioneer invention, as held by the circuit court of appeals in the case of Von Schmidt v. Bowers, supra. What was the effect of this broad construction upon the claims of the Bowers patent? It was that Bowers being a pioneer inventor, and entitled to make broad generic claims for his inventions, without any limitation as to the form of construction of the particular elements, all subsequent machines which employ substantially the same means to accomplish the same results are infringements, notwithstanding the fact that the subsequent machines may contain improvements in separate mechanism which go to make up the machine. McCormick v. Talcott, 20 How. 402, 15 L. Ed. 930; Railroad Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Clough v. Barker, 106 U. S. 166, 1 Sup. Ct. 188, 27 L. Ed. 134; Consolidated Safety-Valve Co. v. Crosby Steam Gauge & Valve Co., 113 U. S. 157, 5 Sup. Ct. 513, 28 L. Ed. 939. This was the scope of the injunction served upon the respondents. It commanded the respondents not to make, use, or sell any dredging machinery, appliances, or apparatus containing the inventions claimed, covered, and patented in and by the claims mentioned in the decree, and also from infringing in any manner whatever upon any of the specified claims. The question is, have the respondents violated the injunction with respect to any of the claims of complainant's patents in the making and using of a machine under the claims of the Parker patent? In the application for the Parker patent, the inventor declared in his specifications the particular improvement in dredging apparatus which he claimed to have made. He says:

"My invention relates to dredging apparatus, and more especially to that portion of the apparatus by which the material is transferred from the plows or diggers by which it is excavated to a distant point, where the dredged mate-

rial is to be deposited, and in a means for advancing the digging apparatus as fast as it is required for the purpose of excavating in fresh ground."

He further points out the particular features of prior inventions for which he proposes to substitute his improvements, and says:

"In some forms of dredging apparatus the discharge pipe consists of a series of sections which are flexibly joined together, and supported upon floats or pontoons, and the pipe is so curved as to be of a considerably greater length than the distance between the dredging apparatus and the point of deposit, so as to enable the dredge to be advanced from time to time by gradually straightening out the curved sections to allow of this advance."

The inventor here refers to the form of discharge pipe employed in complainant's dredging apparatus, and he proceeds to distinguish the form of his discharge pipe from that of the complainant, in the following description:

"In my invention I employ rigid sections of discharge pipe, having suitably tight and essentially rigid joints, whereby they are united together, the whole forming a discharge pipe which may be supported upon the bottom of the stream, estuary, or other water way, if it is necessary to cross such water way; or it may be supported upon the land, if the digging is sufficiently near for the purpose; or if the digging takes place at a distance, across a considerable body of water, the pipe may be supported upon floats or pontoons so anchored in the line of direction of the pipe that the latter will be supported in as nearly a straight line as can be effected with such changes of direction as may be required made by the use of elbows, curved sections, or equivalent joints inserted at intervals between the pipe lengths, and the pipe is thus held in as nearly a rigid line as the effect of the wind and waves upon its supports will allow. The essence of this construction is the fixing of the conveying pipe without flexible joints as rigidly as possible, and as nearly in straight lines from the point of the reception of the dredged material to the point of delivery as can be maintained, and the connection therewith of a telescopic section of any desired length, which is extensible in the line of the pipe, without flexibility, for the purpose of advancing the excavating apparatus from time to time."

He then proceeds to describe his improvements in detail, and concludes with his claims, which are 13 in number. The first claim is as follows:

"A dredger and telescopic section of discharge pipe, the latter firmly anchored in position, and rigidly joined to other sections of discharge pipe extending to the place of deposit for dredged materials, and a joint connecting the telescopic section with the dredger to allow the dredger to move from side to side when at work, and to move ahead as the work progresses, without disturbing said fixed section of discharge pipe."

The telescopic section of discharge pipe described in this claim is one of the essential elements of the combination, and is the device for advancing the digging apparatus as fast as it is required for the purpose of excavating in fresh ground. It is described as part of the combination in substantially the same language in all the claims, except the eighth and ninth. The second claim is as follows:

"In a dredging apparatus, a fixed conveying pipe having the receiving end supported and anchored, a telescoping section slidable longitudinally in said fixed portion, an excavator with suction and discharge pipes, said pipes being hinged at the rearward end to the first-named anchored section."

The fixed conveying pipe described in this claim is also one of the essential elements of the combination. It is described in claim 3 as

a pipe line composed of sections rigidly united together, and this description is repeated as part of the combination in substantially the same language in all the claims, except in the eighth and ninth. In the eighth and ninth claims the telescopic section and fixed conveying pipe are omitted, and a peculiar double-edged cutting dredger is described. These claims are as follows:

"(8) The combination with the suction pipe of a dredge having an opening in the lower side of the front end, of a cutter curved downwardly to form a loop with cutting edges upon both sides, whereby material may be excavated and delivered into the suction pipe by moving the latter transversely to either side. (9) The combination with the suction pipe of a dredge having an opening in the lower side of the front end, of a cutting blade curved downwardly to form a loop beneath the pipe opening, and having cutting edges upon each side, and plates projecting transversely upon each side of the rear of the cutter."

In the 13 claims of this patent these three elements, namely, (1) a telescopic section of discharge pipe, (2) a conveying pipe consisting of rigidly united sections, (3) a double-edged cutting dredger, constitute the improvements claimed by the inventor; and the first two are the essential elements required to enable the dredger to be fed forward from time to time as the work progresses, without moving the entire discharge pipe at each advance, and without the employment of the flexibly jointed sections contained in complainant's invention. Whether Parker was the inventor of these devices does not appear to be seriously questioned in these proceedings, and, for the purpose of the present inquiry, it may be assumed that these elements were improvements for which a patent might properly have been issued to the inventor. But it is clear that these three devices were not of themselves sufficient to be brought together as a combination, and operated as a dredging apparatus. It was necessary that they should be connected in some way, and the combination so united as a dredger as to be capable of performing the function for which it was designed. Is there, with respect to the claims of complainant's patent, an absence of identity in these particular connecting elements? Let us see. Turning to the complainant's invention, we find in claims 9 and 11 a dredge boat is described as having a self-contained pivot or center of oscillation, with devices for swinging and working the boat on this pivot, and in claim 87 a dredge boat is described as having devices for swinging and working the boat with a side feed. In claim 12 the same mechanism is described as a dredging apparatus having a side feed and self-contained pivot or center of oscillation. In claim 13 the mechanism is described as a dredging machine having a device for excavating from side to side of the cut, a discharge pipe extending from a discharging apparatus to or near a center of oscillation, where it is provided with a hollow, flexible joint, or other suitable connection. Here we have the mechanism which in complainant's patent connects the dredger with the discharge pipe and makes it an operative machine. It is necessarily an essential and important element in the invention. There had been dredge boats before Bowers' invention, but they had never been pivoted or anchored, with an excavator firmly attached, so that the dredge boat

and dredger formed a rigid radius, and, as the boat would swing from side to side, hold the excavator to its work in a true arc path. In Bowers v. Von Schmidt, in this court (63 Fed. 572, 584), Judge McKenna, speaking of the flexible joints, and the office of flexibly joining the discharge pipe to the dredge in complainant's machine, said:

> "It enables the action of the dredging machine to be continuous as it swings on a side feed and excavates. This is the essence of the invention,—the new result which was not accomplished before,—and bears the test of all the definitions of combinations to which I have been cited."

In respondents' machine, how is this connection secured? In claim 1 of the Parker patent the telescopic section of the discharge pipe is connected with the discharge pipe on the dredger by a joint to allow the dredger to move from side to side when at work. The dredger referred to is substantially the same as the dredge boat described in complainant's patent. The discharge pipe on the dredger is marked, "Section B," and the joint is described in the specifications as being formed by a well-known swivel or rotary connection, about which joint the section B is turnable from side to side. In claim 3 a joint is used whereby the discharge pipe is connected with the telescopic section so as to allow the excavator to swing from side to side with relation thereto. In all the other claims, except in 8 and 9, a joint or hinge connection is described between the telescopic section and the dredging apparatus, which is clearly designed to allow the dredge boat, with an excavator forming a rigid radius, to swing from side to side when in operation, and thus hold the excavator to its work. In claim 3 the fixed point around which the dredge boat and excavator swing, as a rigid radius, is secured by anchoring the float carrying the telescopic section by means of a spud or pivot. In claim 4 a guide is fixed with relation to the front end of the telescopic section, and is anchored by means of a spud anchor adapted to fit said guide and maintain the slidable section in line with the main pipe. The fixed point or center of oscillation required in swinging the dredge boat and excavator, as a rigid radius, is secured by means of a spud anchor in the guide. In claim 6 this mechanism is described as a socket formed in relation to the front end of the telescopic section, and a vertical spud anchor passing through it, and fixing the end of the telescopic section with relation to the pipe line of which it forms a part, and a structure hinged and turnable about said spud as a pivot. In claim 10 the device is described in substantially the same terms as in claim 6. In claim 11 an anchor is not mentioned, but the center of oscillation is described as a turning joint to allow the excavator to swing from side to side. In the model of respondents' dredging apparatus exhibited in court, the method of operating the boat was clearly established in accordance with the claims of the Parker patent. The swinging of the dredge boat and excavator as a rigid radius is secured by anchoring the front end of the float carrying the telescopic section by means of a spud or anchor, and in the connection between the discharge pipe on the dredge boat and the discharge pipe on the firmly-anchored float is a rotary joint in the pipe, as

described in the specifications, which permits the dredge boat to swing from side to side.

Referring now to patent No. 318,860, dated May 26, 1885, granted to Bowers for the art of dredging, we find that the patent office determined that he was the inventor of an improvement in the art of dredging; and in claims 3 and 5 the improvement was declared to consist in oscillating the boat on a contained center, thereby making an arc-shaped cut during the side movement of the boat, substantially as described. The specifications and drawings of this patent are the same as those contained in patent No. 318,859; and whatever may be the objections to patent No. 318,860, on the ground that it describes the function of a mechanism, and not the mechanism itself, it remains a fact that the function described is performed by the mechanism of patent No. 318,859, issued to the complainant on the same day, and that both patents have been declared valid by the decree in this case. In patent No. 318,859, Bowers incorporated into his specification this declaration:

"I do not herein claim the method of oscillating the boat, nor of raising, conveying, and diluting the spoils; the same being claimed in a division of this application filed April 24, 1885."

This division of the application appears to have been in accordance with a rule which prevailed at that time in the patent office (Ex parte Blythe, Dec. Com. Pat. 1885, p. 82), but which was soon after repealed (Ex parte Young, Id, 108; Ex parte Herr, Dec. Com. Pat. 1887, p. 105). The division of Bowers' application resulted in the patent office granting to Bowers patent No. 318,860, for the art of dredging. Under the present practice, both of these patents would be consolidated in one grant, covering the entire invention; but the two patents issued under the practice then prevailing do not, by reason of such division, diminish any of Bowers' rights under the law, or deprive him of any of his claims. The court is therefore not at liberty in this, proceeding to revise the decree in this case, and, in accordance with that decree, the means and the function as described in these two patents constitute the invention which the complainant is entitled to have protected as his property. Whether the mechanism of respondents' machine infringes the claims of complainant's patent, as alleged, depends, then, upon the substantial identity of the means employed, the functions performed, and the effects produced. It must be manifest, even to a casual observer, that, in function and effect, respondents' machine is, in substance, identical with that of the complainant in swinging the dredge boat from side to side, and in holding the excavator to its work in a true arc path, and in these two elements are found the efficiency of respondents' machine. They are the elements that distinguished complainant's dredger from all the dredgers that had been constructed prior to his invention, and gave him the title of a pioneer inventor. They are also the elements which give to the respondents' machine an advantage over all others except that of the complainant, and bring the new machine into active and direct competition with complainant's invention.

Whether the means employed in the respondents' mechanism to

perform the function and secure the effect produced are the same as that of the complainant is a more difficult question. Some doubt has been suggested concerning the scope of the claims of the Parker patent in this respect. The complainant contends that the claims of the respondents' patent do not cover the device for anchoring the float carrying the telescopic section, or the device of the rotary joint or hinge in the discharge pipe near the center of oscillation, which permits the dredge boat to swing from side to side. But, after carefully considering the language of the claims, and comparing them with the specifications in the patent, I have reached the conclusion that they were intended to cover these devices, as a part of the patentable combination. The foundation for such claims is distinctly provided in the specifications, where the object of the invention is set forth as follows:

"The object of my invention is to provide a means for connecting the rigid conveying pipe with the corresponding rigid connection between said pipe and the digging or excavating mechanism in such a manner that the latter may be advanced as fast as the necessities of the work require, without the employment of any flexible sections in the conveying pipe, and in the formation of a swivel joint between the two rigid pipe sections, which will allow that portion connecting with the digging apparatus to be swung in an arc of a circle with relation to said joint, so as to excavate to any desired width."

It therefore follows that the fact that a second patent was issued with such claims in it creates a presumption of lack of identity in these parts of the two machines. But, notwithstanding this presumption, can the claim of a lack of identity be sustained in this case? I think not. In the first place, it must be remembered that Bowers is a pioneer inventor with respect to these specific devices. It was so determined in Bowers v. Von Schmidt, 63 Fed. 572, and that decision was affirmed in the circuit court of appeals. 25 C. C. A. 323, 80 Fed. 121, 48 U. S. App. 120. It was declared by the circuit court of appeals that Bowers was justly entitled to be regarded as standing at the head of the art, with respect to these devices, and to a broad and liberal construction of his claims thereto. In Rob. Pat. § 746, the law on this subject is stated in the following broad terms:

"A pioneer patent, introducing to the public some art or instrument entirely new, must be interpreted as liberally as its language will permit, in order to protect the original conception in its widest form, notwithstanding any description or claim for specific details which the patent may contain."

In this view of the law of the case, how can the court limit the complainant to a dredge boat with a self-contained pivot forming the center of oscillation exactly as described or claimed? He is entitled to invoke the doctrine of equivalents, and be protected against any device which, performing the same functions and producing the same results, adopts the same idea of means. What was Bowers' idea of the means to perform the function of swinging the dredge boat from side to side while the work of dredging and discharging the dredged material through pipes was in continuous operation? It was a dredge boat having a self-contained pivot forming a center of oscillation, with the discharge pipe flexibly mounted at or near said pivot. What was Parker's idea of the

99 F.—48

means to perform the same function and produce the same result? It was a pivot on the float at the rear of the dredge boat carrying the telescopic section of discharge pipe, forming a center of. oscillation, with the discharge pipe flexibly mounted at or near said pivot. The means are identical, except that in one case the pivot forming the center of oscillation is on the dredge boat, and in the other it is on the floating section immediately in the rear of the dredge boat; the pivot itself performing the same function in both cases. The substance is there, although the form is different. Manifestly, the 'second device is the equivalent of the first.

It is next objected on the part of the respondents that the pivot described in the specifications of the Bowers patent is a turntable and two spuds, and that the respondents' dredger has no such pivot. The self-contained pivot in the Bowers patent is not described as a turntable with two spuds in any of the claims alleged to have been infringed in this proceeding. But, assuming that the pivot forming a center of oscillation is described and limited in the specifications, the question occurs, what sort of a pivot do the specifications point out and describe as performing this function? They describe a mechanism for performing two specified functions: (1) A turntable with two spuds, wherein the latter, advancing alternately, enable the dredger to feed forward; (2) this turntable, with one or two spuds, forming a single center of oscillation, as a pivot, whereby the dredger swings from side to side in the continuous operation of dredging. The pivot must necessarily be single, to become a center of oscillation. If there are two spuds, they are put down through a turntable, and the turntable locked, so as to make a single pivot or center of oscillation. The spud or pivot in respondents' dredger is therefore clearly the equivalent of the spud or pivot described in the Bowers patent for performing the same function. It is the same idea of means, and in law constitutes an infringement. If it be said that this is a broad and liberal interpretation of the claims of the Bowers patent, the answer is that, whether broad or narrow, liberal or illiberal, the law of this case, as determined by the circuit court of appeals, requires this court "to protect the original conception of the inventor in its widest form, notwithstanding any description or claim for specific details which the patent may contain."

As the complainant does not appear to press very earnestly the charge of infringement of claim 87 of the Bowers patent in the use by respondents of hauling lines attached to the excavator of their dredger, no opinion will be expressed upon that feature of the complaint.

The conclusion reached by the court upon a careful examination of the evidence presented upon this motion, and after a careful consideration of the able and interesting argument of counsel, is that respondents have been guilty of infringing claims 9, 11, 12, and 13 of complainant's patent No. 318,859, and claims 3 and 5 of complainant's patent No. 318,860, in the particulars mentioned; and while it would have been more agreeable to the court to have determined this question in some other proceeding, where its conclu-

sions could be reviewed by a higher court, it cannot avoid the responsibility of awarding judgment upon the case as presented.

The punishment to be inflicted in vindication of the court's authority, and for the purpose of securing obedience to its decree, is also an embarrassing responsibility, under the circumstances of this case. But the respondents are alone to blame for the position in which they have been placed. In view of the decisions of this court and the final judgment of the circuit court of appeals upon the claims of the Bowers patent, the validity of some of the claims of the Parker patent, under which respondents' dredger was built, was at least doubtful; and the respondents were at liberty to obtain the opinion of this court upon that subject in advance, by a motion to modify the decree so as to permit the use of the new machine. They elected to take their chances, and they must abide by the result. The law applicable to this aspect of the case is stated by Rob. Pat. § 1214, in the following language:

"An injunction, whether granted on an ex parte or a contested hearing, or by consent, is binding on the defendant, and must be obeyed until rescinded by the court. The defendant has no right to construe it for himself,—ceasing to use what he imagines is forbidden, and continuing to employ the residue,—but must desist wholly from the practice of the invention, and, if he needs further instructions, must make application for them to the court. He cannot be permitted to experiment with other arts or instruments, to see how nearly he can imitate the plaintiff's, yet still escape infringement; and, though he acts under the advice of counsel, his liability to punishment for disobedience to the injunction will not be diminished. His own good faith affords him no protection, and, while the court may consider it in affixing the penalty for his contempt, his violation of the injunction is complete if he intends to do, and actually does, the act which it prohibits, however fully he may have believed his conduct to have been consistent with submission to its terms."

A second proceeding having been instituted against the respondents for violating the perpetual injunction issued upon the interlocutory decree entered in this case, I will proceed to consider that charge. In the first case the respondents were using a dredger in the San Joaquin river, in this state; and while these proceedings were still pending the respondents began work on a dredging contract at South San Francisco, for the Union Iron Works. The only change made in the machine for the new work was in the excavator. A flat excavator, which was not charged to be an infringement of complainant's patent in the first case, was removed, and a rotary excavator substituted. This rotary excavator is now charged to be also an infringement of complainant's invention of a rotary excavator, and particularly an infringement of claims 10, 19, 49, 51, 52, 53, 54, 55, 59, 62, 75, and 87 of patent No. 318,859, and claim 5 of patent No. 318,860. After respondents had completed the contract at the Union Iron Works, they obtained a contract for dredging at Oakland, from Balfour, Guthrie & Co.; and they have proceeded to perform that contract with the dredging apparatus involved in the first charge, with the substituted rotary excavator. In this proceeding the complaint is renewed that the respondents have continued to infringe complainant's patent in the particular elements charged in the first complaint, and the questions relating thereto have all been reargued. What has already been said upon

that subject will apply to the charge as renewed. The only question remaining to be determined is, therefore, whether the rotary excavator used by the respondents is an infringement of the claims of complainant's patent for a rotary excavator. In claims 10, 13, 53, 54, and 59 of complainant's patent No. 318,859, the rotary excavator invented by Bowers is described as follows:

"(10) A dredge boat having a self-contained pivot forming a center of horizontal oscillation, with devices for swinging and working said boat upon said pivot, in combination with a suction pipe, exhausting apparatus, and rotary excavator." "(13) In a dredging machine having a device for excavating from side to side of the cut, a discharge pipe extending from a discharging apparatus to or near a center of oscillation, where it is provided with a hollow, flexible joint, or other suitable connection, and is prolonged thence to a place of discharge." "(53) The combination, with a nonrotative suction pipe, of a rotary excavator having an inward delivery through said excavator. (54) The combination, with a dredge boat and nonrotative suction pipe, of a rotary excavator having an inward delivery through said excavator." "(59) A rotary excavator with inward delivery, in combination with a nonrotating suction pipe mounted upon strong trunnions or equivalent joints, to permit the excavator and outer end of the suction pipe to be raised and lowered to suit the depth at which the work is progressing."

Claim 5 of patent No. 318,860 is as follows:

"(5) The described method of dredging, which consists in oscillating the dredge boat on a center, and by such oscillation forcing an excavator continuously sidewise; thus making an arc-shaped cut, and drawing the excavated material inboard by suction."

The drawing and specifications of the rotary excavator described in patent No. 318,859 are set out in the report of the case of Von Schmidt v. Bowers, 25 C. C. A. 323, 80 Fed. 123, 124, 135, 48 U. S. App. 124, 125, 127. They show a rotary excavator with inward delivery through itself, in combination with a suction pipe. They also show the arc-shaped cuts made by the excavator while the dredge swings from side to side on the pivot or center of oscillation, and devices for working the dredge with a side feed. The evidence shows that respondents' excavator is rotary in action, and that it has an inward delivery through itself in combination with a suction pipe; that it performs the same function and produces the same effect as complainant's device. The only question here, again, is whether the mechanism of respondents' excavator employs substantially the same means as the complainant's excavator to perform the same function and produce the same effect. The defense rests mainly upon the claim that respondents' excavator is constructed upon the same principle as the excavator described in letters patent of the United States, No. 185,600, granted to Allexey W. Von Schmidt December 19, 1876, which, it was admitted in Von Schmidt v. Bowers, supra, was not an infringement of anything patented to the complainant. That excavator consisted of a cutter of four propeller-shaped blades at the end of a rotating rod at the bottom of the suction pipe. This cutter was covered by a hood, and, while the apparatus was constructed to move from side to side, it is plain that it did not have a side feed, and could not be worked practically as a side cutter. It worked downwardly or outwardly in the direction of the feed of the propeller blades, obeying the law of propeller force as exemplified in the

thread of a screw. It is to be observed, further, that the circuit court of appeals, in Von Schmidt v. Bowers, had this very question before it, and, in commenting upon the dredging apparatus described in patent No. 185,600, said, "Its excavator, while rotary, consisted of radiating arms, the effect of which was the exact reverse of that of inward delivery." The respondents' excavator, like that of the complainant, is without a hood, and the cutter blades are so shaped and adjusted that the excavator cuts from side to side as it swings, making an arc-shaped cut. In this respect it is as nearly the means employed to perform the function and produce the effect accomplished by complainant's excavator as was the cutter described in letters patent No. 277,179, granted to Von Schmidt May 8, 1883, for "an excavating curved rotating plow for submarine work," and the cutter described in letters patent No. 306,368, granted to Von Schmidt on October 7, 1884, for "improvements in rotary plows for submarine work," declared by the circuit court of appeals to be infringements of complainant's invention, in Von Schmidt v. Bowers, supra.

It is further objected that the respondents' excavator has not the "inward delivery" that is claimed to be the characteristic of the Bowers excavator. The objection is based upon the difference in the shape and arrangement of the cutting blades. It is contended on the part of the respondent that the cutting blades of the Bowers excavator are so shaped and arranged that they force the dredged material into or towards the suction pipe, and that this inward delivery is the effect, or the principal effect, of the mechanism of the cutter itself, independent of the action of the current of water drawn into the suction pipe, and that the cutting blades of respondents' excavator or cutter, like the cutting blades in the excavator described in patent No. 185,600, have no forcing effect upon the dredged material to drive it inward towards the suction pipe, and that therefore respondents' excavator does not have the "inward delivery" possessed by the Bowers excavator. The answer to this objection is that "inward delivery" is not confined by the claims to the action of the cutter blades, and the opinion of Judge Ross, speaking for the circuit court of appeals, in Von Schmidt v. Bowers, does not so declare. This is what he says upon that subject: "The clear meaning of a claim to an excavator having inward delivery, or with inward delivery through itself, is an excavator so constructed as to produce an inward delivery." How produce inward delivery? By the shape of the cutters? The court does not say so. It says merely that the excavator must be so constructed as to produce inward delivery, or with inward delivery through itself. The excavator here referred to is clearly the entire apparatus, composed of cutters, frame, and suction pipe; and when these, acting together, produce "inward delivery" through the excavator, the mechanism is within the description contained in the claim, whether the force driving the dredged material inward is the equally combined action of the blades and the inflowing current of water, or less of one than the other. The idea of means is the cutting and severing of the material from its place, and the drawing of this material into the suction pipe, and this idea of means the patent office has declared to be an invention. How, then,

can the force of the suction pipe and cutter be divided, and by distribution eliminate the idea of means? In my judgment, the distinction contended for in the interpretation of this claim is more refined than real or substantial.

The affidavits of several expert witnesses have been introduced in evidence upon this motion, on the part of the respondents, in which it is alleged that the rotary excavator in respondents' dredger is the same in principle as that described in the Von Schmidt patent, No. 185,600. But these opinions cannot prevail against the views already expressed by the circuit court of appeals as to the mechanical principles involved in that excavator; and (accepting, as I must, those views as binding upon this court) I must hold that respondents' excavator is not constructed upon the principle of that machine, and that it is an infringement upon complainant's patent No. 318,859, and particularly claims 10, 13, 53, 54, and 59, and upon claim 5 of patent No. 318,860. In the opinion of the court, the respondents have had less excuse for using this excavator than they had in using the pivot or center of oscillation described in the Parker patent. No effort was made to obtain the opinion of the court as to whether this excavator was within the scope of the injunction or not, and not even the advice of counsel was sought upon the subject. Their attitude is inexcusable, and their conduct evidence of bad faith. They must obey the injunction until it has been dissolved or modified. The judgment of the court is that the respondents have been guilty of contempt of court, as charged in the first complaint; that they pay a fine of $200, and pay the complainant the costs of this proceeding, to be taxed by the clerk, including $100 as counsel fee; and that the respondent John Hackett be imprisoned until the fine and costs are paid, not to exceed 30 days. It is also the judgment of the court that the respondents have been guilty of contempt of court as charged in the second complaint; that they pay a fine of $300, and pay the complainant the costs of this proceeding, to be taxed by the clerk, including $100 as counsel fee; and that the respondent John Hackett be imprisoned until the fine and costs are paid, not to exceed 60 days.