## INDIVIDUAL DRINKING CUP CO. v. ERRETT.

### SAME v. HUDSON RIVER DAY LINE.

(District Court, S. D. New York. · November 20, 1916.)

1. Patents ☞109—Amendment which conforms specifications to subsequently appearing structure permissible.
   An amendment may be made, even though it be to conform specifications to subsequently appearing structures.
2. Patents ☞328—1,081,508, claim 26, held valid and infringed.
   Luellen patent, No. 1,081,508, claim 26, for dispensing apparatus for delivering cup or fluid container, held valid and infringed.
3. Patents ☞328—1,081,508, claim 16, held not infringed.
   Luellen patent, No. 1,081,508, claim 16, relating to apparatus for delivering cup or fluid container, held not infringed.
4. Patents ☞328—1,081,508, claims 38, 41, 48, held invalid.
   Luellen patent, No. 1,081,508, claims 38, 41, 48, relating to apparatus for delivering cup or fluid container, held void for noninvention.
5. Patents ☞259—One selling paper cups to be used by infringing machine contributes to infringement.
   Any one who sells paper cups, with knowledge that they must be used by an infringing dispensing machine, directly contributes to eventual infringement, and is guilty of a tort.
6. Patents ☞312(1)—Where use of article sold is ambiguous, plaintiff must show defendant's plan to infringe.
   Where the use of an article sold is ambiguous, plaintiff must show that it was part of defendant's plan that infringement should follow.

In Equity. Suits by the Individual Drinking Cup Company against Charles Errett, doing business as the Lily Cup Company, and against the Hudson River Day Line, respectively. Decree for plaintiff. Modified by 250 Fed. 620, 162 C. C. A. 636.

See, also, 297 Fed. 733.

Clifford E. Dunn, of New York City, for plaintiff.
Hans' von Briesen, of New York City, for defendants.

LEARNED HAND, District Judge. The facts in this case have been so fully set forth in detail in Judge Chatfield's opinion in Individual Drinking Cup Co. v. Public Service Cup Co. (D. C.) 226 Fed. 465, that it will serve no good purpose to restate them. In so far as new references, of which there are very few, have been introduced, they will come up in the general discussion; for the rest, I shall speak upon the assumption that his very clear statement of facts is already in mind. The claims here in suit are 16, 18, 26, 34, 41, 48, and 49, and

these, the plaintiff says, the defendant's Vendor infringes. It also says that the smaller and later machine infringes claims 34, 41, and 48. As this machine was not before Judge Chatfield, some description of it is appropriate. The stack of nested cups is held tops up, and therefore need not be inverted, and the only mechanism is to detach the cups one by one and let them fall a few inches through a tube, with three lugs 120 degrees apart, which catch the rim of the cup and hold it resiliently till it is detached by a slight distortion. The detaching or separating mechanism of the terminal cup from the stack consists of a spur-shaped member, which oscillates, alternately dropping and raising the stack. In the raising phase a wedge member is inserted between the stack and the terminal cup, which separates it if it has stuck. The plaintiff makes a similar machine, as well as the defendant.

Claim 16 is certainly not infringed, if by "movable with" is meant, not "moving at the same time with," but "attached together and therefore along with," as was shown in the actual disclosure. Turning to the specifications for light upon this we find (page 5, lines 60–70) that it means to cover that element of the invention by which "a common operating handle or device [is] to be employed, and * * * all of the steps necessary for the movement of a cup from the stack to the place of delivery [is] to be performed by a single continuous movement of the handle or device." There were such machines, and Lawrence, 1888 British, 14,501, was one of them; but not only was the patent in suit not such, but, if the words "movable with" refer to time, there could not possibly be made such a machine, provided that "the place of delivery" means the place where the customer can reach it, because the cup must be withdrawn into the recess before it can be delivered. In the patent in suit the delivery member delivers an earlier cup synchronously with the detachment of a later one, and thus it takes two movements of the handle, 52, before any given cup is detached from the nest and delivered.

The specification is contradictory with itself, for the adequate reason that the portion cited was put in more than five years after the original application was filed and to cover the defendant's machine. Claim 16, one of the original claims, meant nothing of the sort attempted by the amendment of September 16, 1913, but only that the wedgeshaped fingers are fixed in the rotating drum which inverts the cups, and so move with them. If it were not so, I am unwilling to admit that it would have been invention merely to divide the delivery into two phases, and to perform the drawing of a later cup synchronously with the delivery of an earlier. The mechanism by which this was done certainly was patentable, perhaps even the feature originally intended by claim 16; but the mere fact of dividing the single operation into two seems to me an idea which is too common in mechanics to constitute invention. I find claim 16 not infringed.

The remaining claims divide themselves into three classes. Claims 18 and 26 are in general for the inverted stack of cups with the mechanism for dropping the bottom cup of the stack. Claim 26 is in addition for inverting the cup after it has been dropped. The second class consists of claims 34 and 41, which are more specifically for de-

taching the terminal cup, but contain no statement of inverting and reversing the cup. The last class, claims 48 and 49, are roughly for the releasable support of the terminal cup after its detachment. Claim 49 adds to this the inverted stack and the reversal of the terminal cup. A serious question might be raised in respect of claims 18 and 26, whether the phrase, "dropping the bottom cup" in claim 18, and "permitting said cups to drop one at a time," in claim 26, could refer to a positive detachment of the terminal cup from the stack itself, especially in view of the fact that such a distinction seems to have been made between the language of such claims and that of certain others where different words are used; e. g., 27, 28, 29, 30, 32, 35, and 37 et al.

Before considering that question, however, I wish to take up the general question of the scope of the invention independently of the merely verbal question as to the extent of the claims, and to consider how far the detaching means are new in the art, and what elements of it, if any, can justly be said to embody invention. Lawrence's patent was for an automatic vendor of paper cups, and contained many of the elements of the patent in suit. The chief distinction between the two arises from the fact, first, that the stack is not inverted ; and, second that no provision has been made for positive dislodgment of the terminal cup in case it sticks. In consequence, it is an anticipation of claims 34 and 41, with the exception of this single element of the positive separation of the terminal cup. Indeed, the plaintiff cannot question that conclusion while insisting that the defendant's smaller machine is covered by those claims, as will appear merely by inspection of the two. Yet I quite agree with Judge Chatfield that Lawrence does not show any separation of the cups.

Disregarding, as we must, the mere proportions of the disclosure, which especially in English patents are not to be taken literally, we find no indication in the specifications or in the drawings anywhere that the upper finger, $L$, which is attached to the bar $H$, is broad enough to wedge apart the terminal cup by an intrusion between the lugs of that cup and the one above. On the contrary, no one has answered the argument of Mr. Moses that, in the actual adjustment of the machine shown, the cock, $R$, opens before the upper finger, $L$, could accomplish this result if it were large enough, and that therefore, unless the cup dropped by gravity, the liquid would begin to spill into the recess of the receiver, $P$. I do not think, therefore, that Lawrence can be said, strictly speaking, to be an anticipation of these claims.

Yet it was a part of the prior art, and the step from it to the smaller machine, which was not in suit before Judge Chatfield, seems to me so short and so obvious as not to justify a finding of invention in the distinction. The cups contemplated by Lawrence were not confined to those presented in the models of the plaintiff with massive brass rings of sufficient weight inevitably to be dislodged, if they did stick, and of sufficient breadth to prevent their sticking, if they could not be dislodged. On the contrary, as Judge Chatfield observes, Lawrence contemplated (page 3, line 46) that they may be made of paper with a wire rim merely, to which the lugs are attached, and these are

the only kind· shown in the diagrams. If Lawrence's invention had been used with such cups, the problem would not have taken any ingenuity to discover; it would have discovered itself. If any one had made one of the smaller machines following Lawrence, he would inevitably have learned on using it that the cups sometimes stuck if he used the plaintiff's or the defendant's paraffin type, even if he added lugs. Moreover, he would only have had to make the upper finger, L, thicker, and he would have produced the whole of the smaller machine. I cannot bring myself to take very seriously the pretension that so simple a means for remedying so certain a problem justifies laying a great industry under the domination of one man. Of course, I know the general talk in the cases about the skilled eye of an artisan; but phrases will not answer for facts. Nor have we the case where the art waited long for what now seems so clear; so far as appears, the wedge finger came at once with the paraffin cup, at least with the use of the nested cup. Any suggestion that the art waited for such an element to go forward is no more than the factitious projection of partisan imagination. The movement for such cups took a great impetus from Luellen; that seems proved, and I agree that he did invent something. But here we are dealing with this trifling detail through which he wishes to master the whole industry. There is nothing to commend in that, and not the least reason to suppose that the feature offered any obstacle to progress. Therefore I find claims 34 and 41 void for lack of invention over Lawrence.

Coming back, now, to claims 18 and 26, I shall disregard the difference between "dropping" and "separating," since, as I have shown, it did not constitute invention to make the change. Indeed, for the moment, I prefer to look at Luellen's disclosure as a whole, compared with what went before. Here was indeed no single element upon which invention could be based, neither the stacking, nor the inversion of the stack, nor the separation of the terminal cup, nor its reception upon a projection, nor its reversion by a rotating drum, nor releasable delivery. Yet Luellen did work out the first cup delivery machine which contained all these elements; they were not an aggregation, since each was part of a single process from inverted stack to delivered cup. He worked them out in detail, and he got a great immediate response from the public. The defendants paid him the conventional compliment of servile imitation, with just as much variation as might avoid his rights. Stated so, colloquially, no one can fail to be impressed with the wisdom of Judge Chatfield's refusal to allow the infringement to continue. I quite agree that we should do our best to meet any legal difficulties in Luellen's path to secure him so much of the fruits of his labor. Among these obstacles, of course, is the need of finding a claim which contains enough elements of the combination to present the whole of his invention, and I think claim 26 will serve. If one reads that claim upon the disclosure, it seems to contain all the essential elements. One may read it as closely as possible without excluding the defendant's Vendor, thanks to the faithfulness of its plagiarism. How closely to the disclosure the element which "permits the cups to drop one by one" should go I need not consider. Certainly ·it includes Petsch's worm wedges.

As to claim 18, I decline to make any finding, since it is academic and may never arise. Whether the machine would have been an invention if it delivered inverted cups is probably an idle inquiry, since no one has shown any disposition to deliver the cups that way.

[1] The last element is that of releasable support, claims 48 and 49, which were added on September 16, 1913. No trace of such claim appeared in the original specification, nor did any express trace of that feature of the disclosure now relied upon appear. Yet after considerable doubt I think that there was enough in the specification to justify the amendment, because I believe that the cup would be bound to hang from the points, *80*, after reversal, until it was detached by the weight of water or some other sufficient force. It should be remembered that the stack of cups must be supported above the terminal cup at the moment when it falls into the recess, and this can be done only by having the points, *80*, sufficiently cover the recesses. They would have to go at least to its center, and certainly they were so indicated in the diagram. On the other hand, when the drum is reversed and the terminal cup is to fall out, it cannot do so unless the drum is reversed substantially through 180 degrees, for otherwise the cup will not clear, and yet if it is reversed so much, it is difficult to see how the flanges of the cup can avoid the under sides of the points, *80*. I have been unable to see any mechanical possibility which would avoid the hanging of the cup in the disclosure as originally filed, and therefore I find that there was room for the amendment. Moreover, it is good law that an amendment may be made, even though it be to conform the specifications to subsequently appearing structures. Western Electric Co. v. Sperry Electric Co., 58 Fed. 186, 7 C. C. A. 164; Bowers v. Von Schmidt (C. C.) 63 Fed. 575, 578.

It does not, however, follow that the claims are valid. Claim 48, I think, is not such. It comes to no more than a claim for the releasable support of a cup in any machine of this kind, regardless of the other feature of the whole combination. Now the releasable support of objects in delivering machines was by no means new. In most cases it is true that the article delivered was rigid and it was the support which had to yield. Several of such devices had been put in evidence, of which characteristic examples are Northcutt, 543,963, Gentner, 667,-081, and Henius & Herold, 665,092, figures 11, 12, and 13. When the object, however, is itself resilient, the holder can be stiff. This is admirably illustrated in the case of the cork cabinet of Wilson & Nealy, 570,113, which is almost the same device as that of the plaintiff's smaller machine, except that it delivered corks, instead of cups. The construction of the opening for a temporary support being therefore old in the art, claim 48 seems to me nothing but a new use of it, and I find it void for lack of invention.

Claim 49 is for this feature in combination with a cup-delivering machine having an inverted stack with means for reversing the terminal cup. Although the element of detaching the cup is not in the claim, it is obviously essential to any operable machine, and therefore it does not seem to me to add anything to claim 26, but rather to be limitation of it. I therefore decline to make any finding in respect of claim 49.

[2-4] The result is that I find valid and infringed only claim 26. I find claim 16 not infringed. Claims 38, 41, and 48 I find void for noninvention, and I decline to make any findings on claims 18 and 49, on the ground that they are not involved in the decision of the cause. I can find nothing in common between the patent in suit and the small machine except the detaching mechanism which I have found not to constitute invention. On the other hand, the Vendor I have found to be a mere appropriation of the invention. The plaintiff may therefore take a decree under claim 26 against the defendant's Vendor, and the defendant may have a decree dismissing the bill as against the smaller machine and in respect of the other claims mentioned against the Vendor.

[5, 6] So far as concerns the individual defendant Errett, I see nothing to add to what I decided on the motion for preliminary injunction. Without cups these machines cannot be used, and unless they are used they cannot infringe the patents in the hands of customers. Any one who sells cups with knowledge that they must be used by the infringing machine therefore directly contributes to the eventual infringement and does so with his eyes open. In Henry v. A. B. Dick Co., 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880, the court held it contributory infringement for Henry to sell to the limited licensee ink suitable for use therein with knowledge of the license agreement and with knowledge that it would be used in connection with the mimeograph, yet the ink was not susceptible of that use only. Indeed, in those cases in which the article is only adapted for infringement, the tort is only because the defendant has aided in the ultimate infringement. Where the use is ambiguous, the plaintiff must, of course, show that it was part of the defendant's plan that the infringement should follow; but, if he can show that, the defendant has contributed as much to the tort as though the article could be used only in that way. This I understand to be the effect of Henry v. A. B. Dick Co., pages 48, 49 (32 Sup. Ct. 364), and as such, it is binding upon me.

The decree will therefore forbid the defendant Errett from selling any Lily cups to persons owning the defendant's Vendor under such circumstances as would lead a reasonable person to suppose that the buyers mean to use them in such machine.