### BELKNAP et al. v. WALLACE ADDRESSING MACH. CO., Inc.*

(District Court, S. D. New York. December 10, 1925.)

**1. Patents ⬤⟲259—Essentials of contributory infringement stated.**

Contributory infringement essentially consists in intentionally giving aid to or co-operating in an infringement.

**2. Patents ⬤⟲328—1,256,509, for addressing machine, not invalid because including stencil cards as element in combination.**

Belknap patent, No. 1,256,509, claims 3 to 6, for addressing machine, held not invalid because they included stencil cards as an element in the combination.

**3. Patents ⬤⟲328—1,256,509, for addressing machine, valid and contributorily infringed.**

Belknap patent, No. 1,256,509, claims 3 to 6, for addressing machine, having stencil cards as an element in the combination, held valid and contributorily infringed by manufacture and sale of stencil cards adapted for use in patented structure.

**4. Patents ⬤⟲42—New combination of old elements, producing a new and useful result, is patentable.**

New combination of old elements, producing a new and useful result, is patentable.

In Equity. Patent infringement suit by Edward D. Belknap and another against the

*Judgment affirmed 11 F.(2d) ——.

Wallace Addressing Machine Company, Inc. Judgment for plaintiffs.

A. Parker-Smith, of New York City (Samuel Owen Edmonds, of New York City, of counsel), for plaintiffs.

E. Clarkson Seward, of New York City, for defendant.

WINSLOW, District Judge. This is a suit brought by the plaintiff on a patent owned by him, No. 1,256,509. The patent covers a machine construction and a series of stencil cards co-operating with the other machine elements to stencil a series of names and addresses on envelopes or mailing wrappers. The stencil cards, which are claimed to be one of the elements of the operation, are made of rigid cardboard adapted to this particular machine, with a panel of paper in the center thereof pasted on the cardboard frame; on the margin and back of the margin, classification marks may be placed so as to be distinguishable by the operator as the cards are fed through the machine portion of the apparatus. The stencil panel in the center is capable of having a name and address placed thereon by an ordinary typewriter, which forms the stencil. The machine part of the invention has a printing mechanism or platen holding an envelope against the back of one of the stenciled cards, and an ink roller which can be rolled along the under face of the stencil and so force ink through it onto the underside of the envelope; a stencil-card-feeding mechanism consisting of a reciprocating claw which pulls the stencils one at a time out from the bottom of a magazine or stack and shoves them along the horizontal guides to the printing position; a power operated driving mechanism for the other mechanisms, and, in addition, a mechanism under the control of the operator for throwing both the feeding and driving mechanism, or the feeding mechanism alone, into operation, and either maintaining the feeding or printing mechanism, one or both, at will, or permitting them to come to rest after any one cycle of operations is completed, as desired.

This combination of machine and stencil card elements permits the operator to read the classification marks on each card as it lies in the guides ready to be fed into printing position, and to choose at will (from said classification marks) whether he shall print on an envelope the address typewritten in the stencil card, or whether he shall feed it through without printing from it.

In other words, the mechanism and elements permit the printing and feeding both, or the feeding without printing from the card, as the operator desires, and also permits the operator to control the length of the period of rest between the completed operation for such period of time as he may desire to study the classification marks. He may skip or not skip the printing and take whatever time may be necessary for his brain to function.

The claims of the patent in suit, on which this action is based, are Nos. 3 to 6, as follows:

"3. The combination with a printing mechanism adapted to co-operate consecutively with each one of a series of address bearing strips comprising a reciprocating member, of a series of such strips, an apparatus for feeding them consecutively through the printing mechanism, and means for temporarily disabling the printing mechanism without interrupting the continued operation of the feeding apparatus, said means comprising a cam, a co-operating cam roller, a swinging support for said roller pivoted on the reciprocating member of the printing mechanism, and a device for so moving said swinging support that the roller carried thereby is removed from operative relation with the cam.

"4. The combination with a printing mechanism adapted to co-operate consecutively with each one of a series of address bearing strips comprising a reciprocating member, of a series of such strips, an apparatus for feeding them consecutively through the printing mechanism, and means for temporarily disabling the printing mechanism without interrupting the continued operation of the feeding apparatus, said means comprising a cam, a co-operating cam roller, a swinging support for said roller pivoted on the reciprocating member of the printing mechanism, and a treadle and connections co-operating with the cam roller which when the treadle is depressed throw the roller and its swinging support out of normal position and away from the cam.

"5. The combination of a magazine, a series of address bearing strips stacked in said magazine provided on their upper faces with classification marks, a printing mechanism, guides extending from the bottom of the magazine through the printing mechanism, and an apparatus for feeding the strips one by one from the bottom of the magazine into the guides, together with mechanism under control of the operator for disabling the

printing mechanism but continuing the feeding mechanism in operation, the parts being so proportioned' that when one strip has been pushed into printing position, the classification marks on the succeeding strip will be exposed to view in a position between the magazine and the printing mechanism, so that the operator may then decide whether to print from said strip or to skip it.

"6. The combination of a magazine, a series of address bearing strips stacked in said magazine each provided with classification marks on its upper face, a printing mechanism, guides extending from the bottom of the magazine through the printing mechanism, an apparatus for feeding the strips one by one from the bottom of the magazine into the guides, the parts being so proportioned that when one strip has been pushed into printing position, the succeeding strip will be exposed to view in a position between the magazine and the printing mechanism, and continuously operating driving apparatus for both feeding and printing mechanism, together with means under control of the operator for disconnecting the printing mechanism from the driving apparatus during one or more cycles of operation of the feeding apparatus, whereby the operator, after determining the classification of each strip exposed, can cause the printing mechanism to operate with it or to skip it, as the system of classification may require."

The cards, while fragile, are, for practical purposes, indestructible and may be used indefinitely. The principal user of the combination or structure is the mail order house. New cards to feed the machine and operate with it are required, not to replace worn stencils, but rather for new or additional names or for change of address, if, for that reason, old cards are discarded. Upwards of 1,000 sets of the machine have been sold by the plaintiffs and upwards of 182,000,-000 cards have been sold by them. The profits are derived from the sales of new cards, rather than from the manufacture and sale of the machine.

The defendant has not been actively engaged in the addressing machine business and has never made a machine adapted to the use of plaintiff's stencil cards, but the defendant has manufactured and sold stencil cards adapted to the plaintiff's structure to one of defendant's customers, the International Time Recording Company, and to other customers of plaintiff. This is the basis of the suit, it being contended that the defendant, by the manufacture and sale of the cards, has become a contributing infringer.

The evidence is conclusive that the cards sold by the defendant are exact duplicates of those manufactured and sold by the plaintiff for use in its machine, so that the only question involved in this suit is whether or not the Belknap patent is valid and whether it covers the particular stencil cards as one of its elements.

[1] "Contributory infringement essentially consists in intentionally giving aid to, or intentionally co-operating in, an infringement." Harvey Hubbell, Inc., v. General Electric Co., 267 F. 564, 571 (C. C. A. 2d Circuit); Individual Drinking Cup Co. v. Errett (D. C.) 300 F. 955, 960; opinion by Learned Hand, J.

[2] Defendant contends that claims 3 to 6 of the patent in suit are invalid because they include the stencil cards as an element in the combination. The question has been passed upon by Judge Learned Hand in a prior suit between the same parties on the same cause of action, citing Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 335, 29 S. Ct. 503, 53 L. Ed. 816. The defendant herein argues, however, that the particular point is not res adjudicata as to this trial court, on the theory that the later decision of the Supreme Court in Heyer v. Duplicator Mfg. Co., 263 U. S. 100, 44 S. Ct. 31, 68 L. Ed. 189, has differentiated the Leeds & Catlin Case and the law applicable to the facts herein. In the Heyer Case, the Supreme Court held that a gelatine band, which formed one element of the claimed combination and which was exhausted or worn out in about 60 days, was an ephemeral element, and that the owner of a machine, having acquired its title, could replace the worn-out element with a substitute, so that he could continue doing the same work. Replacement, in substance, is not infringement. In the present instance, as has been pointed out, the stencil cards, though fragile, may be used indefinitely, and the only reason why the owner of a machine needs new cards is because he may desire to add to his set or "repertoire."

In like manner, the defendant's cards (though usable possibly for some other purpose), if sold to and used by an owner of one of plaintiff's machines, are used for new work, and not as a substitute for worn-out cards. The Leeds & Catlin Case protected the owner's right over new talking machine discs specifically adapted to the machine in question and as one of the elements in its

operation. The stencil is not the product of the machine; it is one of the elements of the combination. Without it, the machine is useless. The function of the stencil is joint action; it coacts and produces the result.

I feel constrained to hold that as to this trial court, Judge Hand's decision, resting on the Leeds & Catlin Case, controls the case at bar.

[3] Considering the question of patentable novelty of plaintiff's claims 3 to 6, there are some things, which are persuasive, requiring consideration. Commercial success is present—not due merely to selling ability, but because of real merit.

It is said that a machine known as the Elliott machine establishes prior use. There is some testimony in the record about this machine, but the machine was not produced, nor was the failure to produce it sufficiently explained. A single witness testified as to its construction, use, and sale, and while no reflection upon the good faith of this witness can properly be made, there is lack of corroboration as to the identity, or correspondence, rather, of this machine and plaintiff's structure.

[4] Eight other prior patents are presented, in which the disclosures show various elements incorporated in plaintiff's machine, but I do not find that these elements are combined in any one of these prior patents. Some elements are found in one, and some other elements in one or more of others, but I do not find that all of the elements of the claims individually considered are found combined in the prior art. Plaintiff relies on a combination of co-operative elements, and, after careful examination, I cannot find that any of the alleged anticipatory patents disclose such combination. A new combination of old elements, which produces a new and useful result, entitles the inventor to protection. Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 S. Ct. 652, 53 L. Ed. 1034.

If the patent is valid and the defendant has contributed to its infringement, the defendant is in the same position as though the defendant had established the entire combination structure as disclosed in the plaintiff's machine, as the result is an exact reproduction of the Belknap patented structure.

The court is of the opinion that the question of the validity of the claims under consideration is a close one, but I believe that a distinct advance has been made in the art, although built upon it. The machine has gone into extensive public use, and I am constrained to hold that the plaintiff is entitled to the benefit of the doubt.

In the case at bar, the improvement over the prior art, as set forth in claim 3, consists in substituting a cam and cam roller capable of being swung into and out of normal position in place of the latch, for illustration, in what is known as the Elliott patent. The advantages gained, I am impressed, by the substitution, were, among other things, a more positive, smooth, gradual, and reliable motion, as distinguished from a sudden jolting pull. The prior Belknap patent which was introduced in evidence (No. 889,503) was devised to feed continuously the entire set of cards through the machine, leaving the printing apparatus idle, except at infrequent intervals. In this earlier patent, the card-feed mechanism operates continuously, uncontrolled by the operator. The printing mechanism is normally at rest and is thrown into operation only occasionally to print one or more cards. This is designed to provide for a business where, under ordinary conditions, only a few cards from a long list are used for printing at any one time. In like manner, at the other extreme are the Elliott and Duncan patents introduced in evidence by the defendant, the card-feed mechanism operating continuously, and the printing mechanism usually continuously, to take care of business in which nearly all of the addresses on a given list are to be printed; means being provided for occasionally disabling the printing mechanism to allow occasional cards to be skipped when some particular reason is present for skipping them. Between these two extremes is the patent in suit, in which the card feed does not run continuously, but both the card feed and the printing mechanism come to a stop after each cycle of operation, unless the operator otherwise desires; he being able to control the starting up again of either or both. In other words, in the instant case, the structure provides for a constantly recurring requirement of choice, and the period of rest is determined entirely by the operator, dependent upon whether he were quick or slow in making his choice. The Duncan patent, however, and the British Core patent, both offered in evidence, disclose an apparatus designed to operate the type plates; the printing being effected by an inked ribbon. The type would be a negative and could not be read ordinarily by an operator, nor could classification marks be used on such plates for the guidance of the operator in the exercise of his discretion whether to skip or print.

The Elliott patent, No. 1,180,385, which is offered to show anticipation and prior use, operates with stencil cards; but upon reading claim 3 in the patent in suit, I am of the opinion that Elliott does not meet the claim for the reason that it does not disclose the particular improved disconnecting mechanism consisting of the cam and the swinging roller, which are essential elements of claim 3. The modified Elliott machine, to which reference was made by the witnesses, would not have the same period of time longer or shorter, dependent upon the mental ability of the operator to decipher the distinguishing characteristic of the stencil, which characteristic is to control his decision whether to print or to skip. This inability to control the length of period of rest while the operator is making his choice, which can be done in the Belknap structure, is apparently due to the fact that no one revolution clutch is described as an element of this so-called modified Elliott machine. The continuing of the feed mechanism in operation in any such Elliott machine was automatic and not in any way under the control of the operator. The Braun patent does not have any skip device or one revolution clutch.

It is interesting to note that in the supplemental bill of particulars, in which defendant stated he would undertake to prove the prior knowledge and use by the Elliott Company, at Cambridge, Mass., of the use of a so-called modified Elliott machine, it does not appear in the record that any prior use at Cambridge is in evidence. There is some evidence of the sale of an Elliott machine to a Milwaukee concern, but this would not appear to be covered by the bill of particulars even if the evidence were persuasive, as it is not. There is a reasonable doubt in the mind of the court as to the prior use of this particular machine.

It is not contended by the plaintiff that the various mechanical elements in his structure are new to the art, but his contention is that the combination of all of these elements, including the stencil card peculiarly adapted to his machine, has produced a novel and practical result, and therefore his patent is valid. After a study of the record as to other structures bearing upon the art, I am of the opinion that the plaintiff has a valid patent and that the defendant has contributed to its infringement.

The usual decree will be entered in favor of the plaintiff, which will include protection of the cards adapted and intended for use as an element of the combinations covered by claims 3, 4, 5, and 6.